# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EAZS A. HARPER,** #B83567, | |
| Plaintiff, | Case No. 23-cv-00912-SPM |
| v. | |
| ROB JEFFREYS, ANTHONY WILLS, JOHNSON, FRANK LAWRENCE, ROWLAND, IA JANE DOE, MAJOR, EVANS, D. GARCIA, BROOKS, FENTI, BROWN, BRUMLEVE, LINGUINI, MORRIS, KORONDA, QUERTEMOUS, MEEKS, KIRTCHMERE, M. AGNE, WOOLEY, ELIZABETH, LT. JOHN DOE, WHITE, HOOD, QUICK, GORDON, CRAIN, BENNETT, FITZGERALD, ZANE, QUALLS, BRADLEY, and DIDAY,[1] | |
| Defendants. | |

---

[1] The Clerk of Court is **DIRECTED** to add Defendants Brooks, Fenti, and Linguini to the docket. (Doc. 1, p. 8).

Page 1 of 13

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Eazs Harper, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while at Menard Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Plaintiff states that he is an "ex-gang member" of the Gangster Disciples. (Doc. 1, p. 27). Although no longer a member, he still has "ties to the prison gang." (*Id.*). Plaintiff alleges that on February 26, 2020, while housed at Menard Correctional Center (Menard) in 10 gallery of West House, he stopped Correctional Officers Meeks and Crain and requested protective custody because his life was in danger. (*Id.* at p. 23). Plaintiff informed them that he had been directed by the leader of the Gangster Disciples to stab another member of the gang. Plaintiff refused to stab the inmate, and the leader then instructed fellow gang members to go to Plaintiff's cell and stab him for disobeying a direct order. The officers refused to help Plaintiff. Crain told Plaintiff that he, Crain, does not "do moves" and to "man the fuck up." Meeks responded by saying, "You know the saying…snitches get stitches." (*Id.* at p. 23-24).

As the officers walked away, Plaintiff's cellmate, Raul Ceja, who is a member of the Latin Kings gang, yelled out that Plaintiff was snitching to the police. (Doc. 1, p. 24). Plaintiff and his cellmate began fighting. Meeks returned to the cell and told Plaintiff to "cuff up." His cellmate was told to face the back wall. Plaintiff was then taken to the health care unit and placed in a

medical exam room, but he was not given any medical treatment. Meeks told Plaintiff that if a medical report was filled out by staff, then Meeks would have to write Plaintiff an incident report for fighting, and "he did not feel like doing no paperwork." (*Id.*).

While waiting in the medical exam room, Intel Agent Wooley came in the room. (Doc. 1, p. 25). Plaintiff told her that Meeks and Crain had endangered his life by walking away and leaving him in a cell with Ceja, a known member of the Latin Kings. (*Id.*). Plaintiff also told Wooley about the threat on his life by members of the Gangster Disciples. (*Id.* at p. 26). He stated that he had been hiding in his cell for weeks to avoid the danger. Plaintiff informed Wooley that his cellmate, Ceja, told Plaintiff that he needed to tell the correctional officers to move him to a different cell because he, Ceja, did not want to be caught up in the middle the Gangster Disciples "mess." Plaintiff requested to be moved to a new cell immediately and iterated that he was at risk of harm from his cellmate and the Gangster Disciples. (*Id.*). Wooley told Plaintiff that he would be moved to another housing unit, specifically North 1. (*Id.* at p. 27).

Plaintiff was then taken back to West House and placed on 2 gallery. (Doc. 1, p. 28). Crain told Plaintiff that he, Crain, was not going to take Plaintiff to North House. Plaintiff would remain in West House and be "put on deadlock." Crain told Plaintiff to "stop snitching and you wont have to run all your life." (*Id.*).

On February 28, 2020, Plaintiff was moved to East House and placed on 9 gallery. (Doc. 1, p. 28). He was again housed with a member of the Latin Kings. (*Id.* at p. 28-29). On or around March 3, 2020, Plaintiff notified Lieutenant Qualls and Koronda that he needed to be moved because he feared for his safety from his new cellmate. He told them that he had just been moved because he had fought with his previous cellmate, also a member of the Latin Kings. Plaintiff was denied rehousing. (*Id.* at p. 29). Plaintiff again spoke to Qualls and Koronda on March 5, 2020. He informed them he has been labeled a snitch and so is in danger from all gang members. Plaintiff

told them he was supposed to be placed in North 1 for protective housing but was moved to East House. (*Id.*). Qualls told Plaintiff he would call Intel Agent Wooley and Internal Affairs Spiller. (*Id.* at p. 30). Qualls stated Plaintiff would not be moved until he knew more information. (*Id.*).

On March 11, 2020, Plaintiff requested to speak to a member of the mental health crisis team. (Doc. 1, p. 30). Qualls and Koronda had Plaintiff removed from the cell and brought to speak with mental health crisis team member Gordan and Major Bradley. Gordan and Bradley told Plaintiff that if he was not trying to kill himself or others then they cannot do anything for him. (*Id.*). They told Plaintiff they would call Wooley about his concerns. (*Id.* at p. 31). Plaintiff informed them of the threat on his life by members of the Gangster Disciples. Plaintiff showed them threatening letters he had received. Plaintiff also stated that he could not stayed housed with a member of the Latin Kings. (*Id.*). Qualls said he would contact Internal Affairs Spiller but that Plaintiff would not be moved from his cell. (*Id.* at p. 32). Qualls told Plaintiff that Plaintiff would remain with his current cellmate unless they fight and he, Qualls, sees blood. (*Id.*).

Plaintiff again requested to speak to a member of the mental health crisis team. (Doc. 1, p. 32). Plaintiff this time spoke to White with Koronda present. Plaintiff told them that staff at Menard were endangering his life and setting him up to be harmed by other inmates who have a hit on his life. (*Id.* at p. 33). White and Koronda responded that they could do nothing about the threats and advised him to notify "the people who can." Plaintiff told them that he was in mental and emotional distress. He stated that he has notified the proper officers, but they have done nothing. (*Id.*).

White then went and called the Internal Affairs Department. (Doc. 1, p. 34). When she returned, she told Plaintiff that someone was coming to East House to speak to him. Plaintiff then spoke with Intel Agent Officer Johnson and an unknown officer. (*Id.*) Plaintiff explained his history and why he was requesting protective housing. He also showed them the threatening letters. (*Id.* at p. 34-37). Johnson told Plaintiff that he would be moved to North 1 tomorrow, March 12,

2020. (*Id.* at p. 37).

On March 12, 2020, Plaintiff told Koronda and Lieutenant John Doe that he was to be moved to North 1. (Doc. 1, p. 37). Koronda told Plaintiff that he was not on the list to be moved that day. Plaintiff then requested to speak to a mental health crisis team member because he was having a mental breakdown. (*Id.*). Plaintiff then spoke to White about his ongoing fears and concerns for his safety. (*Id.* at p. 38). White went and called Internal Affairs. She returned and told Plaintiff that he was going to be moved on March 13, 2020. The following day, March 13, Plaintiff was again told that he was not on the list to be moved. (*Id.*).

On April 21, 2020, Plaintiff and his cellmate notified Koronda that they could no longer be cellmates. (Doc. 1, p. 38). Koronda told Plaintiff and his cellmate that Qualls said they would not be rehoused unless they fight. (*Id.* at p. 39). Upon hearing this, Plaintiff's cellmate turned and attacked Plaintiff, punching him in the face and neck. Koronda broke-up the fight and requested assistance from other staff members. Plaintiff was taken to a holding cage in East House. He requested medical treatment, but Qualls told him he looked fine. Qualls then gave Plaintiff a document to fill-out for requesting protective housing. Plaintiff was then rehoused in West House, where he had first fought with his cellmate Ceja. (*Id.*).

At some point Plaintiff was housed in North 2 segregation. (Doc. 1, p. 41). He was told by Correctional Officer Agne on three different days that he would be receiving a cellmate who was a member of a gang from general population. (*Id.* at p. 41-42). Each time Plaintiff would tell Agne that he was a protective housing inmate and could not be housed with an inmate from general population or who was a gang member. Plaintiff would show Agne the documentation stating he was on protective custody status. (*Id.* at p. 42).

On June 29, 2020, Plaintiff was told by Agne, Lieutenant Diday, and Lieutenant Zane that if he did not submit to receiving a cellmate from general population who was a gang member then

they would call the extraction team to remove him from his cell in North 2. (Doc. 1, p. 42). Plaintiff showed them his protective custody documentation, and Zane told Plaintiff that "the protective-custody status don't mean shit to him." Zane then ordered Plaintiff to "cuff-up." Plaintiff said he feared for his safety and needed a mental health crisis team member. Zane then ordered the extraction team to come and remove Plaintiff from his cell. (*Id.* at p. 42-43). Plaintiff was forcibly removed from his cell and taken to a different cell in North 2. Plaintiff was placed in a cell with an inmate named Sanders. At the time Plaintiff was being placed in the cell, Sanders said that he was not going to have another cellmate. Sanders remarked that he had just beat up his last cellmate and asked why they brought him another one to "fuck up?" (*Id.* at p. 43). Plaintiff states that Sanders later attacked and assaulted him. (*Id.*).

On July 7, 2020, during "shower pulls," Plaintiff told Correctional Officer Major, Sergeant Bennet, and Correctional Officer Garcia that he and Sanders could not be housed together and that they were "having words of dislike for one another and had fought more than on time already and they nee[ed] to be moved." (Doc. 1, p. 44). Sanders told the offers he refused to be celled with Plaintiff. Bennet told Sanders that if he refused to go back in the cell with Plaintiff then he, Bennett, was going to spray them both with O.C. gas and force them to sleep in it. (*Id.* at p. 45). After both inmates were back in the cell and had been given medication, Sanders attacked Plaintiff. (*Id.* at p. 47). Plaintiff states that Bennett, Major, Kirtchmere, Garcia, Linguini, Quertemous, Fitzgerald, and Elizabeth stood and watched and did not assist him. After forty-five minutes, O.C. gas was sprayed into the cell. (*Id.* at p. 48). Plaintiff was then taken to a holding cage, and not to the medical unit. He was denied medical care and his asthma medication. Plaintiff had a "busted mouth, chipped tooth, busted head, swollen and red neck, [bruised] back, [bruised] shoulders, [bruised] and busted knees, [and] busted cut [wrists]."

Plaintiff was moved to cell 424 in North 2 without a shower or medical treatment. (Doc. 1,

p. 50). Plaintiff asked to speak to a mental health provider, but his request was denied.

Plaintiff was moved to cell 318 in West House and celled with an inmate named Darron Brewer. (Doc. 1, p. 41). Brewer tried to stab Plaintiff on the orders of the Gangster Disciples. Plaintiff notified an unknown correctional officer, who contacted Intel Agents. The Intel Agents found a knife on Brewer. (*Id.*).

## PRELIMINARY DISMISSALS

Brooks, Fenti, Brown, Brumleve/Brumville, Morris, Quick, Internal Affairs Jane Doe, and Rowland are listed as defendants, but there are no factual allegations against them in the body of the Complaint. All claims against them are therefore dismissed without prejudice. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998).

The Court also dismisses all claims against Rob Jeffreys, Anthony Wills, and Frank Lawrence. Plaintiff states that these individuals failed to "take disciplinary or other action to curb the known pattern of physical abuse of inmates by Defendants." (Doc. 1, p. 51). This failure "contributed to and proximately caused" the described assaults against him. (*Id.*). There are no factual allegations, however, to support the conclusory claim that Jeffreys, Wills, and Lawrence knew of a pattern of abuse by staff at Menard against inmates. Furthermore, there is no supervisory liability under Section 1983. A government employee is "liable [only] for his or her own misconduct." *Aschroft v. Iqbal,* 556 U.S. 662, 677 (2022). Accordingly, Plaintiff has failed to plead a viable Eighth Amendment claim against Jeffreys, Wills, and Lawrence.

The claims against Hood are also dismissed. Plaintiff alleges that he asked Hood, a clinical services correctional counselor, about one of his grievances on July 2, 2020, while she was doing rounds through the housing unit. (Doc. 1, p. 15, 44). She stated that she did not receive the grievance, and he should refile. (*Id.*). These allegations fail to describe any conduct on the part of Hood that resulted in a deprivation of Plaintiff's constitutional rights.

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:[2]

| | |
|---|---|
| **Count 1:** | Eighth Amendment failure to protect claim against Meeks, Crain, Wooley, Qualls, Koronda, Gordon, Bradley, White, Johnson, Agne, Diday, Zane, Major, Bennett, Garcia, Elizabeth, Linguini, Quertemous, Evans, Kirtchmere, Lieutenant John Doe, and Fitzgerald for failing to protect Plaintiff from attack by other inmates at Menard. |
| **Count 2:** | Eighth Amendment claim against Meeks for denying Plaintiff medical care on February 27, 2020. |
| **Count 3:** | Eighth Amendment claim against Qualls for denying Plaintiff medical care on April 21, 2020. |
| **Count 4:** | Eighth Amendment claim against Elizabeth, Major, Fitzgerald, and Bennett for denying Plaintiff medical care on July 7, 2020. |
| **Count 5:** | Illinois state law claim of assault and battery against Crain, Meeks, Qualls, Zane, Koronda, Diday, Bradley, Bennett, Fitzgerald, Agne, Wooley, Major, Garcia, and Rowland. |

### Count 1

Count 1 will proceed as pled against Meeks, Crain, Wooley, Qualls, Koronda, Gordon, Bradley, White, Johnson, Agne, Diday, Zane, Major, Bennett, Garcia, Elizabeth, Linguini, Quertemous, Evans, Kirtchmere, Lieutenant John Doe, and Fitzgerald for failing to protect Plaintiff from attack by other inmates despite being informed of the threat to Plaintiff's safety by gang members at Menard and his cellmates. *See Brown v. Budz,* 398 F.3d 904, 909 (7th Cir. 2005).

### Counts 2, 3, and 4: Deliberate Indifference to a Serious Medical Need

Counts 2 and 3 will be dismissed. Plaintiff does not describe the injuries he sustained from his fights with his cellmates in February and April of 2020, and the Court cannot infer from the

---

[2]Any claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

facts pled that he suffered from a serious medical need. (*See* Doc. 1, p. 24-25, 39).

Count 4 will proceed against Elizabeth, Major, Fitzgerald, and Bennett. After being attacked by Sanders on July 7, 2020, Plaintiff states that his body was swollen, bruised, and cut; he had a chipped tooth and bloody face; and he was in need of his inhaler. Despite these injuries and his requests, Defendants refused to take him to the health care unit. (Doc. 1, p. 49). *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (discussing the elements of a deliberate indifference claim).

**Count 5**

Plaintiff states that Crain, Meeks, Qualls, Zane, Koronda, Diday, Bradley, Bennett, Fitzgerald, Agne, Wooley, Major, and Garcia are liable under Illinois state law for assault and battery for "inciting physical abuse on [him] without need or provocation." (Doc. 1, p. 51).

Under Illinois law, to state a claim for battery, the "[p]laintiff must either establish that [the defendant] made physical contact or that [the defendant] somehow incited, aided, abetted, or acted in furtherance of a common plan to make physical contact in order to bring a battery claim against [her]." *Carreon v. Baumann*, 747 F.Supp. 1290, 1291 (N.D. Ill. 1990) (citing *Sklan v. Smolla*, 420 N.E. 2d 575, 578 (Ill. App. Ct. 1981)). "While mere presence during a battery is not enough to impose liability, presence along with other circumstances may give rise to the inference that an individual otherwise incited…the attack." *Kennedy v. Fritsch,* No. 90 C 5446, 1993 WL 761979, at *12 (N.D. Ill. Mar. 1, 1993) (citing *Sklan,* 420 N.E. 2d at 578)).

Assault in Illinois "involves intentional conduct that places the plaintiff in reasonable apprehension of an imminent battery." *Padilla v. Bailey*, No. 09 C 8068, 2011 WL 3045991, at *8 (N.D. Ill. July 25, 2011) (citing *McNeil v. Carter*, 742 N.E.2d 1277 (Ill. App. Ct. 2001))

The Court will allow Count 5 to proceed against Qualls and Koronda. These Defendants made comments to Plaintiff and his cellmate, while he was housed in 9 gallery, cell 909, that they

would have to remain housed together unless they are seen fighting, resulting in Plaintiff being attacked by his cellmate. (Doc. 1, p. 32, 39).

Likewise, Count 5 will proceed against Bennett, Major, Garcia, and Fitzgerald. Plaintiff alleges that Bennett told Plaintiff and his cellmate, on July 7, 2020, that unless they were fighting, they would not be moved. (Doc. 1, p. 47). After Bennett made this statement, Sanders began attacking Plaintiff. (*Id.*). Then Bennett, Major, Garcia, and Fitzgerald stood there and watched the inmates fight for 45 minutes without intervening. (*Id.*).

Count 5 will be dismissed as to Crain and Meeks. Although they made derogatory remarks to Plaintiff after he informed them that he was receiving threats from gang members, the Court cannot reasonably infer from the facts alleged they incited a fight between Plaintiff and Ceja on February 27, 2020. (Doc. 1, p. 24). In fact, Plaintiff states that when Meeks heard he and his cellmate were fighting, Meeks "rushed back to the cell" and removed Plaintiff. (*Id.*).

Count 5 is also dismissed as to Zane, Diday, Bradley, Agne, and Wooley. There are no allegations that these Defendants physically touched Plaintiff or from which the Court can reasonably infer that they intentionally encouraged or incited the batteries by inaction or affirmative conduct.

## MOTION REQUESTING ACCESS TO FILE COMPLAINT

Plaintiff has filed a motion asking the Court to allow him to proceed with this case even though he is filing it late. (Doc. 2). Plaintiff states that his deadline to commence this suit was February 22, 2023, but he was prevented from timely filing his Complaint by staff at Pontiac Correctional Center. Plaintiff alleges that he gave the Complaint to a correctional officer to e-file and place in his legal box on February 20, 2023. Plaintiff was told that the there was no one to file his Complaint because it was a holiday. The next day, Plaintiff asked another officer to e-file his Complaint, but he was informed that he would have to wait for someone to come to him. On

February 22, 2023, Plaintiff notified Lieutenant Zimmerman of his Court deadline. Plaintiff's Complaint was then placed in his legal box instead of being mailed to the Court. On March 10, 2023, Plaintiff had possession of his legal box and discovered that the Complaint was inside and had not been e-filed or mailed to the Court.

The motion is **GRANTED in part and DENIED in part**. The statute of limitations is an affirmative defense raised by the opposing party, and the Court has no authority to extend the statute of limitations. Furthermore, a court should only dismiss claims during 1915A review under the statute of limitations if the defense is obvious from the complaint. *See Walker v. Thompson,* 288 F. 3d 1005, 1009 (7th Cir. 2002). Whether Plaintiff's claims are barred by the statute of limitations is not obvious from the face of the Complaint. Given the potential tolling arguments that Plaintiff appears to intend to put forth, the Court finds that dismissing his claims based on untimeliness is premature. The Court will allow Plaintiff to proceed on his surviving claims, as discussed above, and will address any potential statute of limitations defenses once and if raised by Defendants.

## DISPOSITION

The Clerk is **DIRECTED** to modify the docket in accordance with footnote 1.

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Meeks, Crain, Wooley, Qualls, Koronda, Gordon, Bradley, White, Johnson, Agne, Diday, Zane, Major, Bennett, Garcia, Elizabeth, Linguini, Quertemous, Evans, Kirtchmere, Lieutenant John Doe, and Fitzgerald. **COUNTS 2** and **3** are **DISMISSED without prejudice. COUNT 4** will proceed against Elizabeth, Major, Fitzgerald, and Bennett. **COUNT 5** will proceeding against Qualls, Koronda, Bennett, Major, Garcia, and Fitzgerald, but is **DISMISSED without prejudice** as to Crain, Meeks, Zane, Diday, Bradley, Agne, and Wooley. All claims against Brooks, Fenti, Brown, Brumleve/Brumville, Morris, Quick

Internal Affairs Jane Doe, Rowland, Jeffreys, Wills, Lawrence, and Hood are **DISMISSED without prejudice.** The Clerk is **DIRECTED** to terminate them as parties to this case.

Because Plaintiff's allegations involve physical injury and inadequate medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Meeks, Crain, Wooley, Qualls, Koronda, Gordan, Bradley, White, Johnson, Agne, Diday, Zane, Major, Bennett, Garcia, Elizabeth, Linguini, Quertemous, Evans, Kirtchemere, Lieutenant John Doe (once identified), and Fitzgerald the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   January 4, 2024**

          *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**