IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EAZS A. HARPER

        Plaintiff,

v.

BRADLEY, *et al.*,

        Defendants.

Case No. 23-cv-00912-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    This matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants John Gordon and Meredith Lee.[1] Plaintiff did not file a response in opposition to the motion. For the following reasons, the motion is **GRANTED.**

### BACKGROUND

    Plaintiff Eazs Harper, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center (Menard), initiated this civil rights action pro se alleging violations of his constitutional rights. In the Complaint, Plaintiff asserts he is a former member of the gang Gangster Disciples and that from February through July 2020, he faced harassment and attacks from other gang-affiliated inmates at Menard. Despite informing staff that his safety was in danger, he was repeatedly denied protective custody and celled with inmates who were gang members. Because Defendants failed to protect him, Plaintiff was attacked by four different cellmates. (*See generally* Doc. 1, 11).

    Specifically, relevant to the motion to dismiss, Plaintiff alleges that on March 11, 2020, while housed in East House, 9 gallery, he told Defendant Gordon, who was a member of the mental

---

[1] Defendants state that the correct identity of the individual identified as "Mrs. White" in the Complaint is Meredith Lee, who was formerly known as Meredith White. (Doc. 60, p. 1 n. 1). The Clerk of Court is **DIRECTED** to correct Defendants' names on the docket as follows: Meredith Lee ("White") and John Gordon ("Gordon").

health crisis team, that he was in danger of being harmed by members of the Gangsters Disciples and his current cellmate, who was a member of the Latin Kings. Plaintiff told Gordon that he was in need of protective custody. Gordon did not assist Plaintiff in securing safe housing and told Plaintiff that he could not do anything for Plaintiff unless Plaintiff was "trying to kill [himself] or kill his cell-mate or others." (*Id.*). Gordon informed Plaintiff that he would contact Internal Affairs Officer Wooley and inform Wooley of Plaintiff's concerns. (*Id.* at p. 31).

Sometime later that day, Plaintiff spoke with another member of the mental health crisis team, Defendant Lee. (Doc. 1, p. 32). He told Lee that he needed to be rehoused to a protective housing unit due to threats made against him by members of the Gangster Disciples and his cellmate. (*Id.* at p. 32-33). Lee told Plaintiff that she could not do anything about the threats and left the room to call the Internal Affairs Department. (*Id.* at p. 33-34). When she returned, Lee told Plaintiff that someone from Internal Affairs was coming to talk to him about the threats he was receiving. Internal Affairs Officer Johnson and an unknown officer came and spoke with Plaintiff and told him that he would be moved the next day. (*Id.* at p. 37). The following day, March 12, 2020, Plaintiff was told that he was not on the list to move cells. Plaintiff then asked to speak with a member the mental health crisis team because he was having a mental breakdown. (*Id.*). Plaintiff again spoke with Lee. (*Id.* at p. 38). After speaking with the Internal Affairs Department, Lee informed Plaintiff that he would be transferred to protective housing on March 13, 2020. Plaintiff was never moved, and on April 21, 2020, Plaintiff was attacked by his cellmate. (*Id.* at p. 38). After the attack, Plaintiff filled out a form requesting protective housing. (*Id.* at p. 39). He was not taken to protective custody. Instead, he was placed in West House, where he had previously been attacked by a different cellmate on February 26, 2020. (*Id.* at p. 39).

For the purposes of the motion to dismiss, Plaintiff is currently proceeding on an Eighth Amendment failure to protect claim against John Gordon and Meridith Lee (Count 1). (Doc. 11).

Defendants seek dismissal on the basis that Plaintiff's claims are barred by the statute of limitations. (Doc. 61).

## MOTIONS TO DISMISS

A statute of limitations defense can be raised in a Rule 12(b)(6) motion to dismiss if the allegations in the complaint contain everything needed to satisfy the affirmative defense. *Indep. Trust Corp. v. Stewart* Infor. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); FED. R. CIV. P. 12(b)(6). The motion to dismiss will be granted if the moving party shows there are no disputed issues of material fact and "if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (quoting *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)); *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

Section 1983 claims borrow the statute of limitations for personal injury torts from the state in which the alleged violation occurred. *Wilson v. Garcia,* 471 U.S. 261, 276 (1985); *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998). Illinois's applicable statute of limitations is two years. *Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989). Federal law, on the other hand, determines the date of accrual for calculating the two-year period. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). "Generally, a claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action." *Id.* Under the continuing violation theory, however, a plaintiff may obtain relief for a time-barred act when that act is linked with the acts that fall within the statutory limitations period because the claim accrues on the date of the last injury." *Smith v. Lind,* No. 14-cv-796-slc, 2016 WL 6210688, at *4 (W.D. Wis. Oct. 24, 2016) (citing *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010)). And finally, there are tolling requirements the Court must consider. Federal courts must toll the statute of limitations period while an inmate is exhausting his administrative grievances. *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001).

The Court agrees that Plaintiff's claims against Defendants Lee and Gordon are barred by the statute of limitations. Plaintiff alleges that on or around February 26, 2020, until July 7, 2020, he repeatedly requested to be housed in a protective custody unit. (Doc. 1, p. 23, 25, 46). Furthermore, he was told as early as February 26, 2020, after the first attack by his cellmate, that he would be placed in North 1 Lower, a unit that "is like a protective housing unit." (*Id.* at p. 27). Plaintiff was never transferred to North 1, and until July 7, 2020, he continued to be housed with known gang members and was physically assaulted more than once. Assuming that the continuing violation doctrine applies, his claims against Lee and Gordon ultimately accrued on July 7, 2020, the last time Plaintiff was attacked by his cellmate.[2] Plaintiff filed this case well after the two-year deadline on March 21, 2023.

Tolling the statute of limitations while Plaintiff exhausted his administrative remedies does not save his claims. In the Complaint, Plaintiff states that he "fully exhausted all available administrative remedies" and cites to Grievance #112-7-20, dated July 9, 2020. (Doc. 1, p. 22).[3] According to Plaintiff's exhibits, Grievance #112-7-20 was fully grieved on February 22, 2021, (Doc. 1 p. 65). Defendants argue that the statue of limitations was tolled by 228 days, from July 9, 2020, when Plaintiff filed this grievance, through February 22, 2021, when the Administrative Review Board issued its ruling. Recent Seventh Circuit decisions have clarified, however, that the grievance tolling period starts when a plaintiff's claim accrues, not when the plaintiff files his grievance. *See Schlemm v. Pizzala,* 94 F. 4th 688, 692-93 (7th Cir. 2024) (Hamilton, concurring) (citing *Bowers v. Dart,* 1 F 4th 513, 518 (7th Cir. 2021)). Thus, the statute of limitations did not

---

[2] In the Merit Review Order, the Court mistook the attempted stabbing of Plaintiff by his cellmate Brewer as the fourth and final attempt on Plaintiff's life. (Doc. 11, p. p. 7). However, upon further review of the Complaint, the Court believes this incident with Brewer occurred before Plaintiff was transferred to North 2 segregation unit sometime in June 2020. (Doc. 1, p. 41). Plaintiff states that while housed in West House, Brewer tried to stab him, and he, meaning Brewer, was placed in segregation after Internal Affairs Officers found that Brewer was in possession of a knife. Plaintiff then goes on to state that he, Plaintiff, was placed in segregation two weeks before Brewer. (*Id.*). This would make that assault against Plaintiff by cellmate Sanders on July 7, 2020, the fourth and final attacked complained of in the Complaint.
[3] Plaintiff makes the claim that he still has not heard back from the Administrative Review Board on Grievance #112-7-20, but he attaches the response to his Complaint. (Doc. 1, p. 22, 65).

begin to run until February 22, 2021, when Grievance #112-7-20 was denied by the Administrative Review Board. *See also* Wilson v. Wexford Health Sources, Inc., 932 F. 3d 513, 518 (7th Cir. 2019) (citing 735 ILCS 5/13-216). But even under this approach, the two-year statute of limitation had still expired by the time Plaintiff filed this lawsuit on March 21, 2023.

The Court notes that in the Complaint, Plaintiff asserts that he submitted a "grievance/complaint form" on June 30, 2020, in which he complained about staff housing him with an inmate with a history of violence, but he did not receive a response. (Doc. 1, p. 44). Plaintiff was told by a counselor that the grievance was not received, and on July 2, 2020, Plaintiff refiled the grievance. (*Id.*). In Grievance #112-7-20, attached to the Complaint, Plaintiff states "this is a resubmittion of the complaint filed on 6/30/2020 on staff misconduct threatening to put my life in danger and doing so by forcing me into a cell with an inmate…" (*Id*. at p. 56). Furthermore, it appears from an Administrative Review Board response to Grievance #121-7-20, date July 9, 2020, that Plaintiff submitted a grievance complaining that he did not receive a response to grievances submitted on June 30, July 2, and July 3, 2020. (*Id.* at p. 66). Any argument that the grievance process was unavailable based on these lost grievances, however, would not extend the time for Plaintiff to initiate this lawsuit. It is clear, that as of July 9, 2020, when he filed a grievance about his missing grievances, he had realized that the administrative process was unavailable to him, "lifting the exhaustion requirement under the PLRA." *See* Hernandez v. Dart, 814 F.3d 836, 840 (7th Cir. 2016) (the unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court."). In this scenario, the statute of limitations would have begun to run on July 9, 2020, and there would be no tolling for exhaustion. If the Court were to toll the time during which Plaintiff tried to exhaust his claims by tracking down the lost grievances, the statute of limitations still expired prior to Plaintiff filing the Complaint, as the Administrative Review Board denied his grievance regarding lost grievances on February 22, 2021. (Doc. 1, p. 66).

Therefore, based on the information in the Complaint, the Court finds that Plaintiff's claims against Lee and Gordon are untimely, and because Plaintiff has not responded to the motion to dismiss, he has not demonstrated otherwise. Accordingly, the Court finds it appropriate to grant the motion to dismiss.

## DISPOSITION

For the reasons stated above, the Motion to Dismiss filed by Lee and Gordon is **GRANTED**. (Doc. 60). The Court **DISMISSES with prejudice** all claims against Defendants Lee and Gordon as barred by the statute of limitations. The Clerk of Court is **DIRECTED** terminate them as defendants and to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED: February 7, 2025**

                                                       *s/Stephen P. McGlynn*
                                                      **STEPHEN P. MCGLYNN**
                                                      **U.S. District Judge**